## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| RICHARD IRVING BECKMAN AND, ) | |
| KARI ANN BECKMAN, ) | |
| ) | |
|      Plaintiffs, ) | CIVIL ACTION NO.: |
| ) | 1:23-CV-06000-SEG |
| v. ) | |
| ) | |
| REGINA CAELI, INC. a/k/a ) | |
| REGINA CAELI ACADEMY AND ) | |
| FATHER AUGUSTINE TRAN, ) | |
| ) | |
|      Defendants. ) | |

## DEFENDANT ROMAN CATHOLIC ARCHDIOCESE OF ATLANTA, INC'S AMENDED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

COMES NOW Roman Catholic Archdiocese of Atlanta, Inc. ("Defendant" or the "Archdiocese"), Defendant in the above-referenced action, by and through its undersigned counsel and pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, files this Amended Motion to Dismiss Plaintiffs' Second Amended Complaint for lack of subject matter jurisdiction and failure to state a claim, and respectfully shows as follows:

## INTRODUCTION

1.     Plaintiffs Richard Irving Beckman ("Rich") and Kari Ann Beckman ("Kari") (collectively, the "Beckmans" or "Plaintiffs") have not stated a claim against the Archdiocese and to the extent that any possible claim does exist it is

barred due to the ecclesiastical abstention doctrine and the Court is without jurisdiction to proceed.[1]

2.      The entirety of Plaintiffs' contentions against the Archdiocese is predicated solely on alleged conduct of Defendant Father Tran ("Fr. Tran") as a member of the board of directors of Regina Caeli, Inc. aka Regina Caeli Academy ("RCA") and services provided by Fr. Tran on behalf of and in furtherance of RCA's interests. Despite Plaintiffs' conclusory assertions that Fr. Tran's actions were as an agent of the Archdiocese, Plaintiffs provide no facts to demonstrate any such agency relationship with respect to any of the alleged conduct by Fr. Tran.  Rather, without any authority or logic, Plaintiffs merely contend that because Fr. Tran. was a priest assigned to the Archdiocese, whatever conduct he engaged in, regardless of whether it was in furtherance of the Archdiocese's business or Fr. Tran's obligations to the Archdiocese, it is nevertheless imputed to the Archdiocese.  No authority exists for such a proposition.

---

[1] Courts have considered the ecclesiastical abstention doctrine as a jurisdictional bar requiring dismissal under Fed. R. Civ. P. 12(b)(1) or an affirmative defense requiring dismissal under Fed. R. Civ. P. 12(b)(6). *See Hosanna-Tabor Evangelical Lutheran Church & School v. Equal Employment Opportunity Commission*, 565 U.S. 171, 195 (2012) (treating the ecclesiastical abstention doctrine as an affirmative defense); *Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Fla.*, 824 F.App'x 680, 682-83 (11th Cir. 2020) (evaluating the ecclesiastical abstention doctrine under Rule 12(b)(1)).

3.     Thus, Plaintiffs fail to allege facts to support that any of the asserted conduct was in a role as an Archdiocese priest.  Rather, to the extent that Plaintiffs' claim against the Archdiocese arises from actions taken outside of Fr. Tran's role as an Archdiocese priest, those actions fall outside of the scope of his relationship with the Archdiocese, which accordingly could not be responsible for them. Because the Amended Complaint fails to include facts sufficient to plead a claim against the Archdiocese, the claim against the Archdiocese should be dismissed.

4.     The only possible inclusion of the Archdiocese in any manner is Plaintiffs' allegation of alleged breaches by Fr. Tran in his role as an Archdiocese priest relating to the Sacrament of Reconciliation under the Seal of Confession. ((Doc. No. 37) (the "Second Amended Complaint"), at ¶ 7-8). Thus, Plaintiffs specifically invoke religious doctrine for the basis of their claim and the ecclesiastical abstention doctrine bars Plaintiffs from asking this Court to second-guess matters of church governance and clarifies that this Court does not have subject matter jurisdiction over this dispute.

5.     Either Fr. Tran's actions arise out of his role for the Archdiocese, and the ecclesiastical abstention doctrine bars judicial intervention, or they arise out of his roles with RCA and fall outside of the Archdiocese's purview. Either way, the claim against the Archdiocese should be dismissed.

## PROCEDURAL BACKGROUND

6.     On January 25, 2023, Plaintiffs filed a Complaint in the Southern District of Texas against Fr. Tran and RCA, seeking a declaratory judgment, an injunction, appointment of a receiver, monetary damages, attorneys' fees, and costs for ten (10) causes of action. (Doc. No. 1) (the "Original Complaint"). That Complaint did not name the Archdiocese as a Defendant. (*Id*). Fr. Tran moved, on April 21, 2023, to dismiss the Original Complaint for lack of personal jurisdiction and subject matter jurisdiction, as well as improper venue. (Doc. No. 13). RCA filed a similar motion three (3) days later. (Doc. No. 15).

7.     In response to the Motions to Dismiss, Plaintiff filed an Amended Complaint on May 12, 2023. (Doc. No. 21). That Complaint named the Archdiocese as a third Defendant. (*Id*.). Of the ten (10) causes of action raised in the Amended Complaint, the only one asserted against the Archdiocese is "Professional Negligence by Defendant Fr. Tran and Employer Liability of the Archdiocese of Atlanta." (*Id*. at ¶¶ 122–25).

8.     The Archdiocese filed two motions to dismiss on June 20, 2023, one for lack of subject matter jurisdiction and failure to state a claim and another for lack of personal jurisdiction and improper venue or, in the alternative, motion to transfer venue. (Doc. Nos. 32 and 33). On July 11, 2023, Plaintiffs filed responses in

opposition to those motions to dismiss along with a Second Amended Complaint. (Doc. Nos. 35-37).

9.    On July 24, 2023, the Archdiocese filed replies in support of their motions to dismiss. (Doc. Nos. 47 and 48).

10.    On December 27, 2023 Judge David S. Morales found that venue was improper in the Southern District of Texas and entered an Order transferring this case to the Northern District of Georgia. (Doc. No. 55).

11.    The transfer order moots the Archdiocese's Motion for Lack of Personal Jurisdiction and Improper Venue and or, in the Alternative, Motion to Transfer Venue. (Doc. No. 33).

12.    The Archdiocese files this Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim in light of the transfer to ensure that its arguments cite to and comport with Georgia law.

## RELEVANT FACTUAL ALLEGATIONS

13.    The Second Amended Complaint makes clear that Plaintiffs' claims arise from the Plaintiffs' founding and business endeavors of RCA, a Georgia non-profit corporation with its principal place of business in Roswell, Georgia. (Second Amended Comp. ¶ 12). According to Plaintiffs, while they were living in Georgia, they founded RCA, with its first location in Atlanta, Georgia to provide a "classical Catholic education program[.]" (*Id*. at ¶¶ 18, 21). Kari served as RCA's executive

director and Rich served as President and Chairman of the Board for about nineteen years until around November 2021. (*Id*. at ¶¶ 21, 22). During Plaintiffs' service, RCA established 23 centers throughout the United States and at least two in the United Kingdom.  (*Id*. at ¶ 23).  In January 2021, RCA began plans and took steps to establish a community in Winona, Texas.  (*Id*. at ¶ 28).  There are no allegations that any of the above actions were presented to the Archdiocese or were approved by the Archdiocese.

14.    Plaintiffs submit that Fr. Tran served as a "director and/or officer of RCA[.]" (*Id*. at p. 1). Specifically, they claim that "Fr. Tran, in addition to being RCA's Chaplain and a member of its Board of Directors, also maintains its information technology." (*Id*. at ¶ 6). "In doing so, he assists in RCA's internet efforts at recruiting students to RCA's Texas campuses." (*Id*.). Additionally, Plaintiffs claim that "Fr. Tran frequently travels to the State of Texas to visit RCA's campuses for speaking engagements, meetings, graduations, conferences, and to provide spiritual guidance to RCA's staff and students." (*Id*.). "Furthermore, Fr. Tran frequently travels to Pious House in Tyler, Texas, and based on knowledge and belief, intends to relocate to Tyler, Texas, to lead the Pious House's Oratorian." (*Id*.).

15.    Plaintiffs claim that after "Kari engaged in an inappropriate relationship," she was forced to "either resign or be fired" and Rich "resigned his position with RCA." (*Id*. at ¶¶ 39, 50, 66). They claim that during Kari's "mental

health crisis" resulting from her inappropriate relationship she "sought spiritual guidance from Fr. Tran, in his capacity as Chaplain for RCA and priest of the Archdiocese of Atlanta". (*Id*. at ¶ 43).  Purportedly, Rich also sought "guidance" from Fr. Tran who expressed to Rich that Kari's actions were "not the end of the world".  (*Id*. at ¶ 45). Rich reported Kari's behavior to the Board and other RCA officers.  (*Id*. at ¶¶ 45, 46). Plaintiffs claim that Fr. Tran thereafter violated his "professional confidentiality as a counselor by revealing information to the [RCA] Board of Directors." (*Id*. at ¶ 54). The only alleged disclosure by Fr. Tran is that he told Kari in the presence of the RCA Board of Directors that "I know I told you during our phone call that you had not ruined everything, but now I think you have." (*Id*. at ¶ 52).

16.     In support of their claim, Plaintiffs make the conclusory allegation that "[a]t all times relevant to this cause of action, Fr. Tran was an employee with the Archdiocese of Atlanta and was acting in the course and scope of his employment; alternatively, the Archdiocese of Atlanta owed Plaintiffs a legal duty to hire, supervise, train, or retain competent priests[.]" (*Id*. at ¶ 128). According to Plaintiffs, the Archdiocese breached that duty, which proximately caused Plaintiffs' injuries. (*Id*.).

17.     As to the Archdiocese, Plaintiffs provide no factual basis for any liability. Rather, Plaintiffs merely conclude that "[f]or purposes of personal

7

jurisdiction, the actions of an agent are attributable to the principal", (*id*. at ¶ 8), and

"[a]t all relevant times, Fr. Tran, as a priest of the Archdiocese of Atlanta, acted as

agent of the Archdiocese of Atlanta, possessing either actual or apparent authority

to act on behalf of the Archdiocese of Atlanta or having his tortious conduct

subsequently ratified by the Archdiocese of Atlanta." (*Id*.).   Plaintiffs' conclusory

allegations do not state a claim against the Archdiocese.

## ARGUMENT AND CITATION TO AUTHORITY

### I.   This Court lacks subject matter jurisdiction over the dispute pursuant to the ecclesiastical abstention doctrine.

18.    The ecclesiastical abstention doctrine arises from the Free Exercise

clause of the First Amendment to the United States Constitution, which provides:

"Congress shall make no law respecting an establishment of religion, or prohibiting

the free exercise thereof." U.S. Const. Amend. I. "[R]eligious controversies are not

the proper subject of civil court inquiry." *Serbian E. Orthodox Diocese for U.S. and

Can. v. Milivojevich*, 426 U.S. 696, 713 (1976). "We have long recognized that both

the Establishment and Free Exercise Clauses require a prohibition on judicial

cognizance of ecclesiastical disputes." *Crowder v. S. Baptist Convention*, 828 F.2d

718, 721 (11th Cir. 1987) (internal quotation omitted). "By adjudicating religious

disputes, civil courts risk affecting associational conduct and thereby chilling the

free exercise of religious beliefs." *Id*. And "by entering into a religious controversy

and putting the enforcement power of the state behind a particular religious faction,

8

a civil court risks 'establishing' a religion." *Id*.[2] *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 F. App'x 926, 928 (11th Cir. 2018) (citations omitted); *Rutland v. Nelson*, 857 F. App'x 627, 628 (11th Cie. 2021) (affirming *sua sponte* dismissal for lack of subject matter jurisdiction based on ecclesiastical abstention doctrine).

19. Plaintiffs' dispute with the Archdiocese fits squarely within the ecclesiastical abstention doctrine. Plaintiffs claim that they sought "spiritual guidance from Fr. Tran, in his capacity as Chaplain for RCA and priest of the Archdiocese of Atlanta." (Amended Comp. ¶ 43). Specifically, they contend their disclosures to Fr. Tran were invoking the Sacrament of Reconciliation under the Seal of Confession, (*id*. at ¶ 7) and complain that Fr. Tran allegedly disclosed details of confidential counseling sessions.

20. These are plainly matters of the Catholic religion. "Those who approach the sacrament of Penance obtain pardon from God's mercy for the offense

---

[2] The Texas Supreme Court applied the ecclesiastical abstention doctrine in an almost identical case. *Westbrook v. Penley*, 231 S.W.3d 389, 397 (Tex. 2007). There, a former parishioner sued her pastor for defamation, negligence, breach of fiduciary duty, and professional negligence after her extramarital affair and related indiscretions were published to the congregation. *Id*. at 393. She attempted to circumvent the ecclesiastical abstention doctrine by arguing that the counseling she received was secular in nature. *Id*. at 396. But the Texas Supreme Court rejected that argument, finding that the former parishioner's professional negligence claim against her pastor "unconstitutionally impinges upon internal matters of church governance in violation of the First Amendment." *Id*. at 405.

committed against him, and are, at the same time, reconciled with the church which they have wounded by their sins and which by charity, by example, and by prayer labors for their conversion." Para. 1422, Catechism of the Catholic Church. Whether or not Fr. Tran was negligent in his administration of these purely Catholic principles requires analysis of the Catechism of the Catholic Church, which expressly prescribes the administration of this sacrament. *Id*. at ¶¶ 1461-1467. To the extent that Fr. Tran's actions were taken in furtherance of his role as a priest for the Archdiocese of Atlanta, those are actions clearly concerning "discipline, faith, internal organization, or ecclesiastical rule, custom, or law. *Crowder*, 828 F. 2d at 725). Thus, these are matters for the Church, not the courts, to decide. This Court, therefore, lacks subject matter jurisdiction over the claims brought against the Archdiocese and those claims should be dismissed.

## II.   Plaintiffs fail to state a claim against the Archdiocese.

21.   To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The facial plausibility standard is not a probability standard, but it instead requires the plaintiff's factual allegations "to raise a right to

relief above the speculative level." *Bell Atlantic Corp. v Twombly*, 127 S. Ct. 1955, 1965 (2007). While a court must take all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, a court is not bound "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 127 S. Ct. at 1964-1965).

22.     A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added).  Conversely, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Although the pleadings must be read in a light favorable to plaintiffs, the court is not required to accept conclusory allegations, legal conclusions, or unwarranted deductions of fact. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). A statement is conclusory when it asserts "a factual inference without stating the underlying facts on which the inference is based." BLACK'S LAW DICTIONARY (11th ed. 2019).

23.     Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to submit pleadings that allege sufficient facts establishing each element of their causes of action in order to state a claim on which relief may be granted.  "[T]o determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end." *Comcast Corp. v. Natl. Assn. of*

*African American-Owned Media*, 140 S. Ct. 1009, 1014 (2020).  While Plaintiff is not required to prove his prima facie case to defeat a motion to dismiss, "it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007).

24.    "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 129 S. Ct. at 1950 (quoting FED. RULE CIV. P. 8(a)(2)); *see also Twombly*, 127 S. Ct. at 1966 (pleading facts "merely consistent with [liability] ... stops short of the line between possibility and plausibility of 'entitlement to relief'").

25.    The Supreme Court instructs a two-pronged approach when analyzing a 12(b) motion to dismiss. *Iqbal,* 129 S. Ct. at 1950.  First, the court identifies those allegations that are mere conclusions and, therefore, not entitled to a presumption of truth and not considered in the rubric of the pleading standard.  *Id.* Then, the remaining pleadings are reviewed to "determine whether they plausibly give rise to an entitlement to relief." *Id.*

**A. Plaintiffs do not sufficiently plead that Fr. Tran was an agent of the Archdiocese.**

26.     ***Despite Plaintiffs' conclusory allegations of agency, Plaintiffs fail to allege facts to establish the Fr. Tran was acting as the Archdiocese's agent in any of the matters asserted.*** Plaintiffs' conclusory allegations regarding an agency relationship between Fr. Tran and the Archdiocese as summarized in paragraphs 8 and 128 of the Second Amended Complaint must be disregarded. *Iqbal,* 129 S. Ct. at 1950.  Moreover, Plaintiffs provide no facts of any agency relationship of the Archdiocese with respect to the RCA or any alleged conduct by Fr. Tran.

27.     Under Georgia law, when made by someone who is not a purported party to the agency relationship, "bare assertions or denials [of the existence of an agency relationship] are merely conclusions of law." *Aetna Cas., etc. Co. v. Malcom*, 149 Ga. App. 754, 755 (1979). Thus, a motion to dismiss based on lack of an agency relationship should be granted when it is not opposed with "credible contentions supporting such a relationship." *Id*. An agency is "created by the actions of the principal." *Ellis v. Fuller*, 282 Ga. App. 307, 309 (2006); *see*. O.C.G.A. § 10-6-1 (stating an agency relationship can be established when the principal "authorizes another to act for him or subsequently ratifies the acts of another in his behalf."). "This relationship may arise if the principal either assumes control over the agent or has the right to exercise control." *Vessell v. Walker*, 231 Ga. App. 713, 714 (1998).

28.     Nowhere in the Amended Complaint are any allegations of any agency relationship with the Archdiocese.     There are no facts demonstrating any involvement by the Archdiocese in any conduct of RCA.  Likewise, there are no allegations that the Archdiocese had the right to control any of Fr. Tran's conduct vis-à-vis RCA and the RCA members, including Plaintiffs.  Indeed, the factual allegations suggest otherwise. While one may infer that RCA originated within the geographical area in which the Archdiocese is authorized to operate, e.g., Atlanta, Georgia, according to Plaintiffs at the time of the incidents complained of, RCA's activities expanded across the United States and into Europe.  Whatever action RCA was taking and whatever actions Fr. Tran was taking in furtherance of RCA, had nothing to do with any interest of the Archdiocese of Atlanta.

29.     Similarly, there are no facts to indicate that the Archdiocese, as the alleged principal, provided any guidance to or engaged in any conduct with Fr. Tran with respect to any matters complained of by Plaintiffs, nor are there any allegations of any acts by the Archdiocese to Plaintiffs to establish any apparent authority of Fr. Tran to act on the Archdiocese's behalf or that the Archdiocese did anything to ratify his alleged actions.     In short, Plaintiffs' claims against the Archdiocese are conclusory without any factual basis and must be dismissed.

30.     ***Plaintiffs' claim of "Professional Negligence by Defendant Fr. Tran and Employer Liability of the Archdiocese of Atlanta." Must be Dismissed.***

(Second Amended Comp. at p.28).[3] The Amended Complaint alleges that Fr. Tran had a duty to exercise ordinary care and act as a spiritual counselor of reasonable and ordinary prudence under the same or similar circumstances in his counseling services, advice, statements, and representations to and/or for the Beckmans and that he allegedly breached that duty by (1) failing to keep confidential information that was allegedly disclosed by Kari; (2) allegedly stating that "Kari is a narcissist"; and (3) allegedly "negligently engag[ing] in other inappropriate conduct and comments about his counseling services, advice, statements, and  representations to, for, and about the Beckmans." (*Id.* at ¶ 127). The only support for their claim of alleged Professional Negligence is contained in paragraph 41 of the Amended Complaint wherein the Beckmans assert that Fr. Tran told Kari, in the presence of the Board of Directors, that "I know I told you during our phone call that you had not ruined everything, but now I think you have";  (2) accused Kari of not being repentant after hearing her confession; and (3) publicly referred to Kari as a narcissist. (*Id.* at ¶ 52).[4] But, Plaintiffs' own Amended Complaint contradicts these allegations, as they admit

---

[3] A plain reading of the Second Amended Complaint suggests that this is the only claim Plaintiffs purport to bring against the Archdiocese. To the extent they intended to raise any other claims against it, those claims fail for the same reasons contained herein and in Fr. Tran's Motion to Dismiss. (Doc. 37).

[4] As stated above, Plaintiffs contend the disclosure to Fr. Tran was part of the Sacrament of Reconciliation under the Seal of Confession, (*Id*. at ¶ 7).  Plaintiffs' therefore claim a violation of Fr. Tran's sacramental obligations which are undeniably barred by the ecclesiastical abstention doctrine. Supra ¶¶ 18-20.

that it was Rich Beckman, not Fr. Tran, who "informed RCA's Board of Directors of Kari's inappropriate relationship with the former director." (*Id*. at ¶¶ 91, 99). And even assuming that Fr. Tran expressed an opinion that Kari is a "narcissist," that would not constitute a sufficient claim or professional negligence. Thus, there are insufficient factual allegations for a claim of professional negligence and this claim should be dismissed.

31.     To the extent that Plaintiffs allegations against Fr. Tran arise from his roles with RCA and with the Beckman's as friends "for nearly twenty years." *Id.* at ¶ 53), those allegations could not be used to state a claim against the Archdiocese. The Archdiocese can only be liable for Fr. Tran's actions when he was acting within the scope of his relationship with the Archdiocese. *Doe v. St. Joseph's Catholic Church*, 313 Ga. 558, 565 (2022).

32.     Under Georgia law, the Archdiocese cannot be responsible for Fr. Tran's actions that are purely personal in nature, are unrelated to his duties as a priest for the Archdiocese, and are outside the scope of his role as a priest for the Archdiocese because they were not in furtherance of the Archdiocese's business. *Alpharetta First U. Methodist Church v. Stewart*, 221 Ga. App. 748, 752 (1996).

33.     Plaintiffs allege that Fr. Tran served as RCA's Chaplain and a member of its Board of Directors. (Doc. 37 at ¶ 6). The actions they complain of can most properly be understood as arising from Fr. Tran's role in that capacity, not his

capacity as a priest for the Archdiocese.  As stated above, there are no allegations that support that the Archdiocese had anything to do with the Plaintiffs, the RCA or their actions, including any actions taken by Fr. Tran while serving as an RCA board member, officer, chaplain or any other capacity. Plaintiffs simply attempt to bootstrap a claim against the Archdiocese solely because Fr. Tran is a priest.  That is not sufficient.

34.     Plaintiffs complain primarily that Fr. Tran made comments to the RCA Board of Directors, referring to her as a narcissist and leading the charge in ousting the Plaintiffs from RCA. (*Id.* at ¶¶ 62, 127). None of these actions fall within the scope of his general authority from the Archdiocese or were in furtherance of the Archdiocese's business and the reason for which he was hired, and Plaintiffs plead no facts to infer otherwise. In fact, in arguing that the ecclesiastical abstention doctrine does not apply, Plaintiffs themselves argue that "[t]he crux of Plaintiffs' complaint arises from Fr. Tran's wrongful, self-interested disclosure of Kari's private, confidential, and protected information to RCA." (Doc. 29 at 6). They go on to say "[t]his is simply a civil law controversy in which a priest happens to be involved[.]" (*Id*. at 7). Either that is true, and Plaintiffs' allegations do not fall within the scope of the Archdiocese's purview, or it is untrue and Plaintiffs' allegations fall within the scope of the ecclesiastical abstention doctrine. Either way, the Amended Complaint should be dismissed against the Archdiocese.

**B. Plaintiffs do not sufficiently plead a claim for professional negligence.**

35. Plaintiffs' Second Amended Complaint does not sufficiently allege a claim for professional negligence. A claim for professional negligence requires a showing of (1) a legal duty to conform to a standard of conduct; (2) a breach of this duty; (3) a causal connection between the conduct and the resulting injury; and (4) damage to the plaintiff." *Pattman v. Mann*, 307 Ga. App. 413, 416 (2010). A claim for professional negligence may be brought to challenge "the propriety of a professional decision . . . when the task in question requires the exercise of professional judgment and care." *King v. Dodge County Hosp. Auth.*, 274 Ga. App. 44, 45-46 (2005). "A professional negligence claim calls into question the professional's conduct in his area of expertise." *Nail v. State*, 301 Ga. App. 7, 9 (2009). Stating a claim for professional negligence requires allegations that the alleged negligence requires the exercise of professional skill and judgment to comply with a standard of conduct within the professional's area of expertise. *Holloway v. Northside Hosp.*, 230 Ga. App. 371-72 (1998). A claim for professional negligence requires proving the failure to do a thing or the negligent doing of it by pointing to "a general standard of care or by rules of procedures used by others competently performing the same service . . . ." *Crawford v. Johnson*, 227 Ga. App. 548, 551 (1997).

36. Plaintiffs do not point to any actual professional standard of care that was allegedly breached. They do not allege that Fr. Tran was a licensed professional or that he had a legal duty to conform to any professional standard of conduct. As detailed above, it is unclear whether Plaintiffs' claim for professional negligence takes issue with Fr. Tran's conduct as an Archdiocese priest, an RCA board member, or in some other capacity. Rather, Plaintiffs leave Defendants and this Court guessing as to what professional judgment and care Fr. Tran was required to possess and allegedly failed to exercise.

37. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach County Sherriff's Office*, 792 f. 3d 1313, 1323 (11th Cir. 2015). Plaintiffs' Second Amended Complaint fails to give Defendants adequate notice of their grounds for alleging that Fr. Tran (1) had a legal duty to conform to a professional standard of care and (2) breached that duty. Assuming that their allegations related to Fr. Tran's "spiritual counseling" fall within his role as a priest, there is no professional standard he was required to meet that could properly be evaluated by a court, as that is by necessity an ecclesiastical exercise that falls outside the bounds of court scrutiny. Accordingly, Plaintiffs' claim for professional negligence should be dismissed for failure to state a claim.

## CONCLUSION

WHEREFORE, Defendant the Roman Catholic Archdiocese of Atlanta, Inc. respectfully requests that this Court grant his Motion to Dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), and dismiss Plaintiffs' claims against Defendant the Archdiocese, and grant the Archdiocese such other and further relief, at law or in equity, to which he may be justly entitled.

Respectfully submitted this19th day of January, 2024.

SMITH, GAMBRELL & RUSSELL, LLP

*/s/ Sasha N. Greenberg*
Stephen M. Forte
Ga. Bar No. 270035
sforte@sgrlaw.com
Matthew William Clarke
Ga Bar No. 127430
mclarke@sgrlaw.com
Sasha N. Greenberg
Ga. Bar No. 497615
sgreenberg@sgrlaw.com
1105 W. Peachtree Street NE
 Atlanta, Georgia 30309-3592
(404) 815-3500
(404) 685-7067 (Facsimile)

***Attorneys for the Archdiocese of Atlanta, Inc.***

## **LOCAL RULE 5.1 CERTIFICATION**

I hereby certify that the foregoing **DEFENDANT ROMAN CATHOLIC ARCHDIOCESE OF ATLANTA, INC'S AMENDED MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM** has been prepared in Times New Roman 14 point font in accordance with Local Rule 5.1

Respectfully submitted this 19th day of January, 2024.

SMITH, GAMBRELL & RUSSELL, LLP

*/s/ Sasha N. Greenberg*
Stephen M. Forte
Ga. Bar No. 270035
sforte@sgrlaw.com
Matthew William Clarke
Ga Bar No. 127430
mclarke@sgrlaw.com
Sasha N. Greenberg
Ga. Bar No. 497615
sgreenberg@sgrlaw.com
1105 W. Peachtree Street NE
 Atlanta, Georgia 30309-3592
(404) 815-3500
(404) 685-7067 (Facsimile)

***Attorneys for the Archdiocese of Atlanta, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 19, 2024, I electronically filed the

foregoing **DEFENDANT ROMAN CATHOLIC ARCHDIOCESE OF**

**ATLANTA, INC'S AMENDED MOTION TO DISMISS FOR LACK OF**

**SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A**

**CLAIM** with the Clerk of Court using the CM/ECF system which will

automatically send email notification of such filing to all attorneys of record.

<u>*/s/Sasha Nina Greenberg*</u>
Sasha N. Greenberg
Ga. Bar No. 497615
sgreenberg@sgrlaw.com

**Attorney for the Archdiocese of Atlanta, Inc.**