IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RICHARD IRVING BECKMAN )
AND KARI ANN BECKMAN, )
                          )
      Plaintiff, )
                          )   Civil Action No. 1:23-cv-06000-SEG
v. )
                          )
REGINA CAELI, INC. a/k/a )
REGINA CAELI ACADEMY AND )
FATHER AUGUSTINE TRAN )
                          )
      Defendants. )

## REGINA CAELI, INC. A/K/A REGINA CAELI ACADEMY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT

Defendant Regina Caeli, Inc. a/k/a Regina Caeli Academy ("RCA") hereby moves to dismiss Plaintiffs Richard Irving Beckman and Kari Ann Beckman's Second Amended Complaint [Doc. 37] ("Complaint").

## I.    INTRODUCTION

The Beckmans' Second Amended Complaint does nothing to cure the fatal deficiencies of their first two pleadings. Instead, Plaintiffs have only succeeded in once again placing Kari's affair at center stage. While Plaintiffs never seem to tire of rehashing their tabloid-story Complaint, RCA does not share the same fetish for publicity or incurring legal spend. After dodging a merits determination for nearly a year, the time has finally come for Plaintiffs to stand on their allegations.

All of Plaintiffs' "merits" allegations fail for the same reasons outlined in RCA's original and Amended Motions to Dismiss. [Doc. 15]; [Doc. 27]. The Beckmans' half-hearted attempt to retool their rifle-shot claims only adds four sentences to their scandalous recitation of Kari's infidelity – two sentences in the fraud claim, [Doc. 37] at ¶¶ 92 & 97, and two sentences in the defamation claim. *Id*. at ¶¶ 108-09. For the fraud claim, the Beckmans add a citation to 26 U.S.C. § 7434 and allege RCA willfully filed fraudulent tax returns for the Beckmans and (2) that Plaintiffs seek actual damages under this statute. *Id*. at ¶¶ 92 & 97. For the defamation claim, the Beckmans generically allege RCA and Fr. Tran published allegedly defamatory statements "with knowledge of their falsity," and that Plaintiffs again claim "general damages." *Id*. at ¶¶ 108-09.

None of these tweaks salvage the Beckmans' fatally deficient claims (the remainder of which are unchanged from the prior motions practice). The new § 7434 theory fails because: (1) the Beckmans affirm the amounts reflected on their individual information returns, thereby pleading themselves out of a cause of action; and (2) because Rich's classification as an independent contractor vs. employee is governed by the Fair Labor Standards Act, not the Internal Revenue Code. The additional allegations in the defamation claim flunk *Twombly*/*Iqbal* because they are merely the formulaic recitation of the elements of the cause of action and fail to plead special damages as required for libel per quod.

Therefore, despite having been finally transferred to the appropriate venue after a tortured jaunt in Texas, this case remains a misguided use of judicial resources for what is essentially a public relations stunt. The Court should not allow the Beckmans to further clog its docket. This case should be dismissed.

## II.    FACTUAL BACKGROUND

### A.    The Beckmans Found RCA in Roswell, Georgia in 2003; Serve as Executive Director and President for Nineteen Years.

The Beckmans, along with other Catholic homeschoolers, founded RCA in 2003. [Doc. 37] at ¶¶ 17-18. Rich was President and Chairman of the Board until he resigned in the midst of Kari's affair in November 2021. *Id*. at ¶ 22. Kari was the Executive Director. *Id*. at ¶ 21.

### B.    Kari Registers Copyrights for RCA's Logo and Mission Statement; Allows RCA to Use Them in Exchange for Salary.

Kari alleges she developed RCA's logo and Mission Statement prior to founding RCA in 2003. *Id*. at ¶ 20. Kari also alleges she registered the copyrights under Registration Nos. VA002301284 and TX0009054637, respectively. *Id*. Each was registered almost twenty years after RCA's first use without attribution and *after* Kari left RCA, on December 10 and 22, 2021, respectively. [Doc. 27-2] at 2; [Doc. 27-3] at 2. However, Kari does not allege she ever prohibited RCA from using the logo and Mission Statement at any point in her 19 years as Executive Director. *Cf.* [Doc. 37] at ¶¶ 20, 120-21. Moreover, Kari admits that, after the first

3

five years, she was paid a salary for all of her contributions to RCA – including its use of the copyrights. *Id*. at ¶ 21. Finally, Kari does not allege there was a written license agreement, nor does she allege she revoked any permission to use the copyrights until November 2021. Rather, faced with the opportunity to plead around or disprove the irrevocable nonexclusive implied license and/or abandonment of the copyrights, Kari failed to do so – because she cannot. *See infra* Section IV.B.5.; [Doc. 15] at ¶¶ 49-52.

### C.   Rich Volunteers for RCA; Kari Does Not Pay Rich.

Despite holding the titles of "President" and "Chairman of the Board," Rich admits he "volunteered his time" to RCA, and "never received a salary or other renumeration for the time expended in these" volunteer capacities. *Id*. at ¶¶ 22, 34. For all the allegations regarding "[t]he Beckmans' sacrifice, leadership, and financial prudence," *id*. at ¶¶ 23-24, Rich *does not* allege who, other than he and Kari, would be responsible for fixing his salary or complying with wage and hour laws like the FLSA. *Cf. id*. at ¶¶ 136-38. Moreover, while Rich pleads "RCA. . . . failed to pay Rich. . . . in violation of their agreements," Rich does not attach or elucidate which of the "one or more enforceable contractual agreements" he allegedly entered "during his 19-year tenure with RCA[.]" *Id*. at ¶¶ 141-42.

**D.    Kari Establishes Herself as a Public Figure through her work with RCA and Veritatis Splendor.**

Kari alleges that: "during the nineteen years the Beckmans led the organization [RCA], including Kari's work as Executive Director of RCA. . . . RCA grew into a thriving non-profit and educational institute with twenty-three centers in the United States and two affiliated centers in the United Kingdom, serving thousands of students and their families[.]" *Id*. at ¶ 23. Moreover, Kari alleges she made "media appearance[s] and coverage of the [Veritatis Splendor] projects on both the local and national level[.]" *Id*. at ¶ 33.

Veritatis Splendor ("VS") is a prototype Catholic community the Beckmans helped conceive. It now exists as a separate organization.

**E.    Kari's Affair and the Beckmans' Resignations.**

The Beckmans allege Kari decided to step out on her husband and commit the mortal sin of adultery around or before "the spring and early summer of 2021." *Id*. at ¶ 39. In the fallout of Kari's marital infidelity, Kari, as RCA's Executive Director, placed herself on medical leave on October 13, 2021. *Id*. at ¶¶ 40-41. She told her husband she had been cheating on him with another RCA board member the next day. *Id*. at ¶ 42.

Kari informed the Board of her affair prior to sending the resignation letter attached to RCA's initial Motion to Dismiss, and there were several remote meetings among Kari, Rich, and the Board prior to the date the resignation letter

was sent to the entire organization. [Doc. 27-1] at ¶ 16. All meetings were done via phone call or video conferencing. *Id*. Fr. Tran was in Georgia when he forwarded the resignation letter Kari authorized to RCA's employees and families. *Id*. at ¶ 17; [Doc. 37] at ¶ 61.

### F.   Public Discourse About Kari's Affair.

Consistent with her status as a public figure, Kari alleges former RCA employees and bloggers have discoursed about her infidelity. [Doc. 37] at ¶ 64. Kari's indiscretions have also been documented by reputable publications such as The American Conservative and other Catholic commentators, such as the Pope Francis Generation. *See* Rod Dreher, Adultery 1, Veritatis Splendor 0, The American Conservative, https://www.theamericanconservative.com/veritatis-splendor-kari-beckman-adultery/; Paul Fahey, *Splendor of Truth/Spiritual Abuse*, Pope Francis Generation, https://www.popefrancisgeneration.com/p/splendor-of-truth-spiritual-abuse.

### G.   Post-Resignation Correspondence and Amended Tax Documents Sent to Beckmans in Georgia and via Email.

In 2022, RCA's accounting firm, Mauldin & Jenkins, performed both a forensic audit and an annual audit in 2022 for calendar year 2021. [Doc. 27-1] at ¶ 24. The results of these audits raised questions as to an alleged excess benefits transaction for Rich and non-monetary compensation for both Rich and Kari. *Id*. Additionally, RCA's external comptroller, APN Group, worked closely with

Mauldin Jenkins to prepare the audits and assisted in identifying possible non-monetary compensation. *Id*. Based on this professional advice, RCA's payroll company issued the amended W2's and 1099's forming the basis of the Beckmans' declaratory judgment, fraud, and defamation claims. *Id*. at ¶¶ 25-26.

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction Under the Ecclesiastical Abstention Doctrine.

"A dispute involving the application of church doctrine and procedure to discipline one of its members is not appropriate for secular adjudication." *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 F. App'x 926, 928 (11th Cir. 2018).

### B.   Motion to Dismiss for Failure to State a Claim.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Under Rule 9(b), claims of fraud must be plead with particularity, which means identifying the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S. v. Multinational Def. Servs., Ltd. Liab. Co*., 32 F.4th 1298, 1307 (11th Cir. 2022).

## IV.   ARGUMENT AND CITATION TO AUTHORITY

### A.   The Ecclesiastical Abstention Doctrine Bars Plaintiffs' Claims.

The Eleventh Circuit has "long recognized" that the Establishment and Free Exercise clauses require courts to refrain from adjudicating ecclesiastical disputes. *Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Fla.*, 824 F. App'x 680, 683 (11th Cir. 2020). Thus, "[c]ivil courts lack jurisdiction to entertain disputes involving church doctrine and polity" entirely." *Myhre*, 719 F. App'x at 928 (affirming dismissal of a complaint for lack of subject matter jurisdiction). This includes disputes with religious organizations applying doctrine, like Plaintiffs alleged RCA did. [Doc. 37] at ¶¶ 43, 51; *Puri v. Khalsa*, 844 F.3d 1152 (religious non-profit corporation); *Garrick v. Moody Bible Inst.*, 412 F. Supp. 3d 859 (N.D. Ill. 2019) (religious educational institution).

All of the Beckmans' claims arise from the fallout of Kari's admitted affair and her subsequent resignation from RCA consistent with the adopted church teachings. The RCA Employee Policy Handbook referenced in the Beckman's Complaint clearly states: "Serious actions contrary to the Church's teachings (including, but not limited to cohabitation outside of marriage, **engaging in sex outside of marriage**" and "**flagrant deceit or dishonest or scandalous  public behavior**) **may result in termination** of employment." [Doc. 26-1] at ¶ 6. Thus, each claim falls squarely within the ecclesiastical abstention doctrine.  Even

the Beckmans do not contend RCA breached the Handbook, thereby confirming application of the ecclesiastical abstention doctrine and lack of any contract construction claims. *See id*.

For all of these reasons, this court is barred from adjudicating RCA's response to Kari's failures to conform with catholic moral standards.[1] The Court should dismiss under the ecclesiastical abstention doctrine.

**B.      The Beckmans Fail to State Any Claim for Relief.**

**1.      <u>Texas Declaratory Judgment Act Claim Fails.</u>**

i.      <u>Declaratory judgment unavailable for federal tax liability</u>.

The Beckmans seek a declaratory judgment under the Texas Declaratory Judgment Act relating to their federal tax liability. [Doc. 37] at ¶¶ 86-89. However, "[t]he Texas Declaratory Judgment Act is a procedural mechanism that is inapplicable in federal court." *Piazzo v. Allstate Indemnity Co*., 601 F. Supp. 3d 189, 195 (S.D. Tex. 2022).

Moreover, 28 U.S.C. § 2201(a) "**prohibits federal courts from entertaining proceedings for declaratory relief in cases involving federal taxes.**" *Stone v. I.R.S.*, No. 3:11-CV-2263-B-BK, 2012 WL 369251, at *2 (N.D. Tex. Jan. 17, 2012); *Hancock Cnty. Land Acquisitions, LLC v. United States*, 553 F.3d 1284, 1291 (N.D. Ga. 2021). Accordingly, the federal Declaratory Judgment

---

[1] Putting aside that it was Plaintiffs who published Kari's adultery <u>and</u> Kari who voluntarily resigned.

Act excludes federal tax matters from its remedial scheme and does not confer jurisdiction over the requested relief. This claim fails.

ii.    <u>Beckmans fail to state a claim to declare Rich is not an independent contractor</u>.

The Beckmans also "request the Court to declare that Rich was an employee of RCA rather than an independent contractor." [Doc. 37] at ¶ 89. Declaratory judgments require an actual controversy. *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999). "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. *Id*. Here, Rich does not allege any facts showing any likelihood of future injury. [Doc. 37] at ¶ 89. Therefore, this claim fails for lack of actual controversy.

**2.**    **<u>Fraud and Negligent Misrepresentation Claims Fail</u>.**

RCA addresses these claims together because they are both subject to the Rule 9(b) pleading standard <u>and</u> are predicated on the same operative facts. *Regenicin, Inc. v. Lonza Walkersville, Inc.*, 997 F. Supp. 2d 1304, 1314-15 (N.D. Ga. 2014) (dismissing plaintiff's claims for fraud and negligent misrepresentation, which relied on same allegations of fact, for failure to meet heightened pleading standard). Their elements are virtually identical. *Compare Bowden v. Med. Ctr., Inc.*, 309 Ga. 188, 199 n.10 (Ga. 2020) (fraud elements are a false representation,

scienter, intention to induce an action, justifiable reliance, and damages) *with First Bank of Ga. v. Robertson Grading, Inc.*, 328 Ga. App. 236, 246 (2014) ((1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance).[2]

The Beckmans allege RCA perpetrated two frauds: (1) the Board falsely represented at an unspecified board meeting that it "supported Kari's medical leave of absence," and told Kari it "was not contemplating terminating her employment," [Doc. 37] at ¶ 91; and (2) RCA "issued no tax documents to Rich in 2021 and issued Kari an original 2021 [W2]," on which the Beckmans relied in filing their individual tax returns, and/or failed to disclose that "RCA was going to issue falsely amended tax documents." *Id*. at ¶ 92. The Beckmans' negligent misrepresentation claim merely repackages the same irrelevant and conclusory allegations with the formulaic recitation the representations were made negligently rather than intentionally or recklessly.

First, the Beckmans fail to satisfy Fed. R. Civ. P. 9(b)'s heightened pleadings standard for fraud because they did not allege the "who, what, when, where, and how of the fraud alleged." *Omnipol*, 32 F.4th at 1307. Specifically,

---

[2] Georgia law applies to Plaintiffs' state law claims. [Doc. 88] at 6-7. To the extent the Court determines Texas law applies, it is fully briefed in RCA's prior motions.

Kari does not allege *who* on the Board allegedly voted to ratify her leave, *what* was actually being ratified (duration, scope, duties, or really any details whatsoever – no details are provided), *when* or *where* the vote took place, and *how* the alleged ratification was effective. Indeed, Kari does not allege that RCA's governing documents even required ratification, or that her decision to go on leave would have been ineffectual without Board ratification. [Doc. 37] at ¶ 91. Moreover, Kari fails to particularly allege reasonable reliance on any representation the Board "was not contemplating" firing her, does not allege the Board relinquished its inherent power to change its mind (which power cannot be relinquished), and ignores her well-documented admissions that she resigned. Finally, the terms of her self-imposed medical leave lack all detail and she provides no indication her decision to stay on her self-imposed medical leave was dependent on keeping her job. *Id.* at ¶ 41. Indeed, according to her, leave was required. *Id*. at ¶¶ 50 & 56.

Second and similarly, the alleged "support" of Kari's self-imposed medical leave is a non-issue, as she was Executive Director and does not dispute she had absolute discretion to place herself on leave. [Doc. 37] at ¶ 41. So viewed, Kari cannot show the key element of fraud and negligent misrepresentation – falsity – in any allegations of RCA's "support" of her self-imposed medical leave (or lack thereof); she does not allege RCA had any choice in the matter.

Further, there is no reasonable basis for anyone to conclude what action items were required in connection with the alleged "support." Was it encouragement? Prayer? Was there a financial component and, if so, in what amount? Was it fundraising? A charitable contribution? Was it identifying a therapist or perhaps marriage counselor? Was it paying for either and, if so, for how long? The unanswered questions are endless. Thus, this feigned reliance on "support" lacks all detail, is a legal nullity, and cannot form the basis of any claim.

Finally, Kari cannot demonstrate reasonable reliance on alleged "support" or any lack of contemplation of termination that was communicated *after she had already placed herself on leave*. It is chronologically impossible. Finally, to the extent the Board offered any "support" at all, pure after-the-fact "puffery" or opinion on such nebulous, immaterial matters as Kari's personal decisions cannot form the basis of fraud. *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1320 (11th Cir. 2019) ("Excessively vague, generalized, and optimistic comments—the sorts of statements that constitute puffery. . . [are] not material."). These claims fail.

### 3.    The Beckmans' §7434 Claim Fails.

In the only substantive edit to the Second Amended Complaint, the Beckmans assert a private cause of action for alleged filing of false tax returns under 26 U.S.C. § 7434(a) as a subset of their fraud claims. [Doc. 37] at ¶¶ 92-97.

"§ 7434(a) creates a private cause of action only where an information return is fraudulent with respect to *the amount purportedly paid to the plaintiff*."*Derolf v. Risinger Bros. Transfer*, 259 F. Supp. 3d 876, 885 (C.D. Ill. 2017) (quoting *Liverett v. Torres Advanced Enter. Sols. LLC*, 192 F. Supp. 3d 648, 653 (E.D. Va. 2016)) (emphasis added) (internal quotation marks omitted); *Tran v. Tran*, 239 F. Supp. 3d 1296, 1297 (M.D. Fla. Mar. 7, 2017) ("liability under Section 7434 requires a misstatement of the amount of payment")).

Here, the Beckmans plead themselves out of a § 7434 claim because neither Beckman alleges any amount shown on their individual information returns is fraudulent, and such an allegation is required. Rather, the Beckmans affirm the amounts shown by specifically alleging "the RCA Board of Directors ratified the housing and vehicle use [the excess benefits] as an employer convenience and the Beckmans work at the VS property *more than recouped the benefit received*[.]" [Doc. 37] at ¶ 80 (emphasis added). Obviously, the Beckmans could not contend the Board "ratified" the amounts or make the value assessment that their work on the VS property "*more than recouped the benefit*" if the Beckmans actually contended the reported amount was fraudulent. *See id*. So viewed, the Beckmans' § 7434 claim is a shameless attempt to shift their own tax liability to RCA. This is not the proper basis of a § 7434 claim.

Further, the Beckmans' allegation that the 1099 mischaracterizes Rich as an independent contractor instead of an employee is a non-starter, as plaintiffs cannot maintain tax fraud claims based on an employer's alleged "filing of the wrong *type* of information return" – *i.e.*, a 1099 for an independent contractor as opposed to a W-2 for an employee – "rather than a misrepresentation as to the amount of the payments made." *Liverett*, 192 F. Supp. 3d at 650-55 (emphasis in original). In other words, "[t]o read § 7434(a) as creating a private cause of action for the injury plaintiff alleges here would essentially read § 7434(a) as encroaching on the territory that the FLSA occupies. Indeed, there can be no doubt that Congress intended for claims arising from misclassification of employees as independent contractors to find statutory redress under the FLSA," and Plaintiffs have asserted a FLSA claim. *Id*. at 654-55. Therefore, Plaintiffs' § 7434 claim necessarily fails.

### 4. **The Beckmans' Defamation Claims Fail.**

The Beckmans allege RCA defamed them by: (1) issuing "erroneous tax forms" to them; and (2) "issued talking points around November 14, 2021 to RCA staff and student families asserting RCA was prepared with a succession plan, knowing that Kari would retire at some point and that the RCA officers have been essentially running RCA for over a year as Kari focused on other projects" – i.e., Veritatis Splendor. [Doc. 37] at ¶ 106.

To maintain a defamation cause of action, a plaintiff must show "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Grace v. Lowery*, 359 Ga. App. 881, 883 (2021). Whether words are per se defamatory is a question of law, and "the court 'may not hunt for a strained construction' in order to hold the words used as being defamatory as a matter of law." *Bellemead, LLC v. Stoker*, 280 Ga. 635, 637 (2006).

i.  <u>Federal tax documents cannot support defamation claims</u>.

Statements in federal tax documents are not defamatory. *Klayman v. Jud. Watch, Inc.,* No. CIV.A.06-670 CKK, 2007 WL 140978, at *18 (D.D.C. Jan. 17, 2007) ("The Court shall therefore grant Fitton and Judicial Watch's motion to dismiss Count Nine insofar as it is based on allegedly defamatory statements made in Judicial Watch Form 990 tax returns."), *vacated in part on other grounds*, 2007 WL 1034936 (granting dismissal of additional claims). This is because RCA's statements to the IRS are compulsory and privileged; any failure to disclose excess benefits could expose RCA to tax liabilities or other adverse consequences. *Cf. id.*; *Bakst v. Cmty. Mem'l Health Sys., Inc.*, 2011 WL 13214303, at *12 (C.D. Cal. Jan. 31, 2011) (excess benefit transactions statements privileged). This claim fails.

        ii.    <u>Beckmans' fail to allege each element of defamation</u>.

The Beckmans' allegation that any reference to a "succession plan" was false is the height of hubris.[3] As this lawsuit underscores, the Beckmans cannot conceive of an RCA without them. However, the Beckmans' factual allegations disclose with certainty that the complained-of statement was not defamatory. Moreover, it fails to recognize that: (1) Kari is a public figure; (2) the resignations were a matter of public concern, and therefore, Plaintiffs must meet a heightened showing of actual malice to state a defamation claim; (3) the statement is so benign that, as a matter of law, it is not defamatory and also cannot proximately cause any injury; and (4) no special injury was pleaded as required to state a claim for this alleged libel per quod – in fact, Plaintiffs' failed amendment specifies they seek only "general damages"; not special damages.

        a.    *Complained-of Statement is not defamatory*.

The threshold question is whether the complained of statements are reasonably capable of a defamatory meaning. *Bellemead*, 280 Ga. at 637. This means the allegedly defamatory words must be "recognized as injurious on their face—without the aid of extrinsic proof." *Id.* Again, it bears repeating that this

---

[3] Perhaps rivaled only by their request for appointment of a receiver to protect their legacy despite their complete separation from RCA. [Doc. 37] at p. 30-31, § C.

Court is prohibited from "'hunt[ing] for a strained construction' in order to hold the words used as being defamatory as a matter of law." *Id.*

The alleged defamatory statement, which was appended to a resignation email Kari authored and authorized Fr. Tran to send to RCA's families, reads:

> This leadership team, which has been in place for the past year and has been effectively running the organization, is the result of our ongoing succession planning.

[Doc. 27-4] at 3. This statement is not defamatory because it is true.

First, "[s]uccession planning is obviously necessary for a corporation to have[.]" *See Bos. v. Blue Cross & Blue Shield of Kansas, Inc.*, 431 F. App'x 763, 767 (10th Cir. 2011) (reject arguments succession planning was pretext in discrimination suit). The Beckmans have failed to allege facts plausibly explaining how a reasonable person would perceive "succession planning" as defamatory.

Second, this statement perfectly aligns with the facts alleged in the Beckmans' Complaint. The Beckmans allege they moved to Texas in January 2021 to "fulfill the promise" of the VS Project. [Doc. 37] at ¶ 29. Kari also alleges that, while working on VS Project, she spent her time "marketing; working with local realtors; sales event planning; property showing[], including evenings and weekends; networking support of the project; and media appearance and coverage of the projects on both the local and national level[.]" *Id*. at ¶ 33. Although Kari may not have been contemplating full retirement at the time, with Kari fully

engaged in "lead[ing] the overall project development," *id*. at ¶ 30, it is to be expected RCA had to make accommodations for other administration – whether denominated as a "succession plan" or otherwise. Thus, the complained-of statement is true or substantially true by Kari's own pleadings, and therefore, unactionable. *Bryant v. Cox Enters., Inc.*, 311 Ga. App. 230, 234 (2011) (substantial truth is a defense to defamation); *Bird v. Weis Broad. Corp.*, 193 Ga. App. 657, 658 (1989) (same).

Third, this statement is not defamatory because it is not verifiably false. The Complaint alleges that RCA sent the email on November 14, 2021, on or around the time that Kari offered her resignation "in November of 2021." [Doc. 37] at ¶ 60. Thus, it must be true that RCA engaged in "ongoing succession planning" to facilitate Kari's medical leave, which she instituted one month prior, on October 13, 2021. *Id*. at ¶¶ 41-42; *Jaillet v. Ga. Television Co*., 238 Ga. App. 885, 888 (1999) ("[A] statement is not considered false unless it would have a different effect on the mind of the viewer from that which the pleaded truth would have produced."). Alternatively, the email can be understood as rhetoric or hyperbole to assuage understandably concerned RCA families. *Grace*, 359 Ga. App. at 884 ("mere statement of opinion or rhetorical hyperbole is not actionable.").

Moreover, Kari cannot be heard to complain of the Board's interpretation of the new leadership team's "effective[ness]," as that portion of the statement is either substantially true or an opinion. *Id*. Under no circumstance is it defamation.

b.      *Failure to plead special damages*.

Although Kari alleges defamation *per se*, the substance of her claims sound in libel per quod. Reference to an "ongoing succession plan" or that Kari was focused on VS are not *per se* defamatory because they do not charge Kari with a crime, dishonesty, or immorality or injure her in her occupation. *Zarach v. Atlanta Claims Ass'n*, 231 Ga. App. 685, 688 (1998). Thus, the claim is libel per quod.

To state a claim for libel per quod, Kari must plead special damages with particularity. Fed. R. Civ. P. 9(g). "The special damages required . . . must be the loss of money or some other material temporal advantage **capable of being assessed in monetary value**." *McGee v. Gast*, 257 Ga. App. 882, 885(2002) (granting motion to dismiss for failure to plead special damages) (emphasis added).

Here, Kari's amendment pleads her out of special damages, as she has added claims for "general damages" and "wrongs or injuries *incapable of specific monetary valuation*." [Doc. 37] at ¶¶ 109-10 (emphasis added). Therefore, Kari has admitted *in judicio* her claimed damages flunk the "capable of being assessed in monetary value" standard. *Id*.; *McGee*, 257 Ga. App. at 885. The court should dismiss the defamation count.

c.   *No actual malice*.

Kari's allegations establish she is a public figure who must show actual malice to survive a motion to dismiss. Far from establishing actual malice, the Complaint does the exact opposite and proves the complained of-statement was not defamatory or was true or substantially true. *Ladner v. New World Comm.,* 343 Ga. App. 449, 460 (2017). Either way, malice cannot be inferred and far more than an inference is required.

d.   *Privileged communication*.

Moreover, RCA's communication to its families and employees about Kari's high-profile departure was privileged, and therefore, unactionable. "[C]ommunications are protected by qualified privilege when, inter alia, they are '[s]tatements made in good faith in the performance of a legal or moral private duty.'" *Murry v. Community Health Sys. Professional Corp.*, 345 Ga. App. 279, 286 (2018) (quoting O.C.G.A. § 51-5-7 (2)) (alteration in original). "Where a party is asserting the defense of qualified privilege, the statement must be made in complete good faith with an interest to uphold, and the statement must be properly limited in scope, made on a proper occasion, and made to a proper person." *Id*.

Here, given the unique religious commonality among its members, RCA's homeschool families share an interest in the continued success and operation of the Academy into the future sufficient to support privilege. Consistent with its

Employee Handbook adopting catholic doctrine for adultery as a terminable offense, RCA had a moral private duty to inform the RCA families of their foundress' departure. Moreover, the statement was made in good faith, limited in scope to necessary succession planning, *Bos.*, 431 F. App'x at 767, made at a proper time (upon Kari's retirement), and to the proper audience – the RCA families and employees only. Thus, the statement is privileged and unactionable.

### 5.  **Copyright infringement.**

The Beckmans allege RCA's ongoing use of the RCA logo and Mission statement violate Kari's copyrights because Kari "has not licensed or otherwise authorized" RCA to use them since November 2, 2021. [Doc. 37] at ¶ 112. Tellingly, however, the Amended Complaint does not deny that Kari's prior conduct of allowing RCA to use the copyrights for over a decade in exchange for compensation from 2008-2021 created an irrevocable nonexclusive implied license. *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 879 (5th Cir. 1997); [Doc. 37] at ¶ 20. Alternatively, Kari abandoned the copyrights through the overt act of allowing RCA to use them without any license and without attribution for nearly twenty years. 4-13 NIMMER ON COPYRIGHT § 13.06; *Imperial Homes Corp. v. Lamont*, 458 F.2d 895, 898 (5th Cir. 1972).

### 6.   <u>Federal Law Preempts Conversion of Intellectual Property Claim</u>.

This claim is preempted by federal law because the Beckmans' do not allege RCA "unlawful[ly] ret[ained] . . . the tangible object embodying plaintiff's work," and such an allegation is required. 6A Fed. Proc. Forms § 17:57 & n.16.

### 7.   <u>Professional Negligence Not Asserted Against RCA</u>.

The ecclesiastical abstention doctrine also bars the professional negligence claim against Fr. Tran and the Archdiocese. *Westbrook, Jr. v. Penley*, 231 S.W.3d 389, 401 (Tex. 2007).

### 8.   <u>No Contract Breached with the Beckmans</u>.

The Beckmans claim RCA breached an alleged contract "to provide educational services for their children" by prohibiting the Beckman's from coming onto school property "and/or attending commencement ceremonies." [Doc. 37] at ¶¶ 69, 137. This claim is moot. No Beckman children currently attend any RCA center, and any student who was a high school senior in 2021 has already graduated. [Doc. 27-1] at ¶¶ 20-22. Moreover, the Beckmans do not allege RCA failed to tender substantial compliance in educating the Beckman children <u>or</u> any damages flowing from the alleged breach. O.C.G.A. §§ 13-4-20, 13-6-2; *Am. Infoage, LLC v. Only Solution, Software, LLC*, 362 Ga. App. 706, 709 (2022). Further, extra-contractual damages are barred by the economic loss rule. *Stewart v. Lanier House Co.*, 75 Ga. 582, 598 (1886). This claim fails.

### 9.   Rich Failed to Allege Willful Violation by Kari to extend FLSA Statute of Limitations.

Rich alleges he "volunteered his time" to RCA, [Doc. 37] at ¶ 34, and volunteers fall within an FLSA exception. *See* 29 C.F.R. § 553.101. Alternatively, Rich's allegations that he served as President and Chairman of the Board at least raise the question of whether he is an exempt executive. 29 U.S.C. § 213(a)(1). Therefore, this claim should be dismissed. Even if this Court finds Rich was not exempt and stated a claim, he may only recover unpaid wages from 2021 under FLSA's two-year statute of limitations for non-willful violations. 29 U.S.C. § 255(a). Applying the three-year statute of limitations for willful FLSA violations places Rich in a conflict of interest with Kari, who was Executive Director at all relevant times and in control of his compensation. [Doc. 37] at ¶¶ 21, 138.

### 10.   Breach of contract with Rich.

Alternatively, the Beckmans allege Rich had "one or more enforceable agreements with RCA during his 19-year tenure with RCA as, among other titles, an officer and director of RCA," and that "RCA, in violation of their agreements, failed to pay Rich." [Doc. 37] at ¶¶ 141-144. These unidentified, nondescript contracts are barred by Georgia's six (6) year statute of limitations. O.C.G.A. § 9-3-24. Thus, Rich cannot recover for any breaches of contract before 2017. However, this claim should be dismissed in its entirety because Rich's boilerplate allegation he entered "one or more enforceable contractual agreements" with RCA

over the course of 19 years fails to plausibly allege the black-letter elements of offer, acceptance, and consideration or <u>any</u> material terms. *Cf.* O.C.G.A. § 13-3-1. Alternatively, Rich's binding admissions *in judicio* that he "self-sacrifice[d]" via his volunteering preclude this claim and confirm there was never a contract for payment. [Doc. 37] at ¶¶ 24, 25, 34, and 38.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant this Motion. RCA also joins Fr. Tran's Second Amended Motion to Dismiss.

Respectfully submitted this 23rd day of February 2024.

BAKER, DONELSON, BEARMAN
CALDWELL & BERKOWITZ, PC

*/s/ Steven R. Press*
Steven R. Press
Georgia Bar No. 587199
Tyler Bishop
Georgia Bar No. 566705
3414 Peachtree Road NE, Suite 1500
Atlanta, GA 30326
Telephone: (404) 577-6000
Facsimile: (404) 221-6501
spress@bakerdonelson.com
tbishop@bakerdonelson.com

*Counsel for Defendant Regina Caeli, Inc.,*
*a/k/a Regina Caeli Academy*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that the pleading has been prepared in Times New Roman, 14-point type, which is of the font selections approved by the Court in Local Rule 5.1(B).

**BAKER, DONELSON, BEARMAN CALDWELL & BERKOWITZ, PC**

<u>/s/ Steven R. Press</u>
Steven R. Press
Georgia Bar No. 587199
spress@bakerdonelson.com

*Counsel for Defendant Regina Caeli, Inc., a/k/a Regina Caeli Academy*

## <u>CERTIFICATE OF SERVICE</u>

This will certify service of a copy of the foregoing was filed and served via the CM/ECF online filing system with the U.S. District Court for the Northern District of Georgia, which will automatically send email notification to all counsel of record.

Respectfully submitted this 23rd day of February 2024.

**BAKER, DONELSON, BEARMAN CALDWELL & BERKOWITZ, PC**

*/s/ Steven R. Press*
Steven R. Press
Georgia Bar No. 587199
spress@bakerdonelson.com

*Counsel for Defendant Regina Caeli, Inc., a/k/a Regina Caeli Academy*