UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RICHARD IRVING BECKMAN AND KARI ANN BECKMAN | ) ) ) | |
| Plaintiffs, | ) ) ) | CIVIL ACTION |
| V. | ) ) | NO. 1:23-CV-06000-SEG |
| REGINA CAELI, INC. a/k/a REGINA CAELI ACADEMY AND FATHER AUGUSTINE TRAN | ) ) ) ) | *Electronically Filed* |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO
DEFENDANT REGINA CAELI, INC. A/K/A REGINA CAELI
ACADEMY'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
AND BRIEF IN SUPPORT**

NOW COME Plaintiffs Richard Irving Beckman ("Rich") and Kari Ann Beckman ("Kari") (collectively, the "Beckmans" or "Plaintiffs") and file this response to the *Motion to Dismiss Second Amended Complaint and Brief in Support* (Doc. No. 91, and referred to herein as the "Motion") filed by Defendant Regina Caeli, Inc. a/k/a Regina Caeli Academy ("RCA"), and Defendant Father Augustine Tran's ("Fr. Tran") *Notice Of Joinder In Defendant Regina Caeli, Inc. A/K/A Regina Caeli Academy's Motion To Dismiss Second Amended Complaint* (Doc. No. 92); and in support hereof would respectfully show the Court the following:

## I.     SUMMARY

Once again, RCA spares no opportunity to use inflammatory language to fixate on Kari's "scandalous infidelity"[1], rather than addressing the Plaintiffs' well-pleaded Complaint, and audaciously blames the Plaintiffs for RCA's rising legal fees over the past year when it is RCA and its co-defendants who have yet to file an answer in this case. Instead, RCA and its co-defendants have peppered the docket with motions, thus causing legal fees to soar.

As set forth below, the Court should deny the Motion on the following grounds:

- The Court possesses subject-matter jurisdiction over this action. The Court can adjudicate this case under secular, neutral legal principles that do not require the Court to resolve any religious controversies or delve into the matters of internal church governance. Therefore, dismissal is not warranted pursuant to the ecclesiastical abstention doctrine. *See Carrier v. Ravi Zacharias Int'l Ministries, Inc.*, No. 1:210CV-3161-TWT, 2022 U.S. Dist. LEXIS 87758, at *11-12 (N.D.Ga.Atl., May 13, 2022) (*citing Jones v. Wolf*, 443 U.S. 595, 603 (1979). *See also Shannon v. Mem'l Drive Presbyterian Church United States*, 476 S.W.3d 612, 622 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) ("A court may interpret church documents under neutral principles of law when it can do so in purely secular terms without relying on religious precepts in resolving the conflict.").

- The Plaintiffs' causes of actions against RCA are well-pleaded and pass 12(b)(6) muster. "[The C]ourt must accept all well-pleaded facts as true and view them in the light most favorable to the [P]laintiff[s]." *Albright v. Oliver*, 510 U.S. 266 (1994). Additionally, "a motion to dismiss should be granted when 'it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Cheal v. Life Ins. Co. of N. Am.*, 330 F. Supp. 2d 1347, 1351 (N.D. Ga. 2004) (emphasis added).

---

[1] *See* Motion, at p. 2.

Moreover, "[i]n considering whether to grant or deny such a motion, the Court may look only to the pleadings." *Id*.

## II.    ARGUMENT AND AUTHORITY

### A.    The Court Should Not Dismiss this Case Pursuant to the Ecclesiastical Abstention Doctrine

The ecclesiastical abstention doctrine arises from the Free Exercise Clause of the First Amendment and provides that the First Amendment prohibits civil courts from exercising jurisdiction over matters concerning "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713-14 (1976); *see also Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Fla.*, 824 F.App'x 680, 682-83 (11th Cir. 2020).

However, "the Supreme Court and the Eleventh Circuit have rejected an absolute rule that civil courts are powerless to resolve any church property dispute. Courts may apply a neutral-principles approach in cases that involve[] no consideration of doctrinal matters . . . ." *Carrier*, 2022 U.S. Dist. LEXIS 87758, at *12 (citing *Jones v. Wolf*, 443 U.S. at 603) (Internal Quotations Omitted). Further, "there is no authority or reason precluding courts from deciding other types of church disputes by application of purely secular legal rules, so long as the dispute . . . can be decided without resolving underlying controversies over religious doctrine." *Id*.

(citing *Puri v. Khalsa*, 844 F.3d 1152, 1165 (9th Cir. 2017)).

"While . . . the First Amendment to the United States Constitution afford[s] broad protection to the free exercise of religion, they do not necessarily bar all claims which may touch on religious conduct." *Tilton v. Marshall*, 925 S.W.2d 672, 677 (Tex. 1996). The Free Exercise Clause does not protect actions in violation of social duties or that are subversive to good order. *Id.*; *see also Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 12 (Tex. 2008) ("[R]eligious practices that threaten the public's health, safety, or general welfare cannot be tolerated as protected religious belief."). "[C]ourts do have jurisdiction to review matters involving civil, contract, or property rights even though they stem from a church controversy." *Lacy v. Bassett*, 132 S.W.3d 119, 123 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Dean v. Alford*, 994 S.W.2d 392, 395 (Tex. App.—Fort Worth 1999, no pet.).

"In determining whether the ecclesiastical abstention doctrine applies, courts must analyze whether a particular dispute is 'ecclesiastical' or simply a civil law controversy in which church officials happen to be involved." *Shannon v. Mem'l Drive Presbyterian Church United States*, 476 S.W.3d 612, 622 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citing Tran, 934 S.W.2d at 743). "A court may interpret church documents under neutral principles of law when it can do so in purely secular terms without relying on religious precepts in resolving the conflict." *Shannon*, 476 S.W.3d at 622 (citing *Hawkins v. Friendship Missionary Baptist*

*Church*, 69 S.W.3d 756, 759 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). Further, in *Clarke v. Miracle Temple Ministries Inc.*, No. 6:13-cv-1250-Orl-22TBS, 2014 U.S. Dist. LEXIS 39164, at *12–13 (M.D.Fla, Mar. 5, 2014), the court stated: "[t]his case involves contract interpretation as well as the intentions, expectation, and obligations of the parties. It does not—as a core issue—involve any questions of [religious] discipline, faith, ecclesiastical rule, custom, or law." *Id*. (citing 66 Am.Jur.2d Religious Societies § 14 (2014) (Internal Quotations Omitted). "The First Amendment does not provide religious organizations absolute immunity from civil liability." *Nation Ford Baptist Church Inc. v. Davis*, 876 S.E.2d 742, 750 (N.C. 2022). "The dispositive question is whether resolution of the legal claim requires the court to interpret or weigh church doctrine." 714 S.E.2d 806, 810 (N.C.App. 2011) (Internal Quotations Omitted).

RCA is a non-profit corporation formed under the laws of the State of Georgia. RCA operates educational institutions on campuses throughout the United States. No formal or informal affiliation exists between RCA and the Catholic Church.

Given the foregoing uncontested facts, application of the ecclesiastical abstention doctrine is inappropriate here. RCA seeks to conflate its existence with the Catholic Church, despite no affiliation existing between the two. Simply stated, RCA is not a church and its code of conduct, despite being informed by the teachings of the Catholic Church, does not implicate the disciplinary process of the Catholic

Church. If an entity or institution simply needed to adopt principles informed by religious teachings to avoid civil claims, all entities would do so.  Potentially, all litigation could be eliminated if anybody and everybody could claim their actions were informed by religious doctrine of whatever faith.

RCA identifies *Puri v. Khalsa*, 844 F.3d 1152 (9th Cir. 2017) in support of application of the ecclesiastical abstention doctrine applying to a "religious non-profit corporation," yet in that case, the Ninth Circuit actually holds that the plaintiffs' claims were not barred by the ecclesiastical abstention doctrine. Further, RCA's reliance on *Garrick v. Moody Bible Inst.*, 412 F. Supp. 3d 859 (N.D. Ill. 2019) for the proposition that the ecclesiastical abstention doctrine deprives jurisdiction with respect to a "religious educational institution" is misplaced. There, a teacher was terminated for expressing views not in line with the college's principles, namely that she believed "in gender equality in ministry." *Id.* at 863. The college moved to dismiss on religious autonomy grounds, in which the court commented: "[the defendant] claims that its religious autonomy wrests this Court of subject-matter jurisdiction. This is incorrect. '[T]he Supreme Court has repeatedly reminded the lower courts of the narrow scope of truly jurisdictional rules.'" *Garrick*, 412 F. Supp. 3d, at 869. The court in *Garrick* noted that "jurisdiction is determined by what the plaintiff claims rather than by what may come into the litigation by way of defense" and the religious autonomy principles upon which the defendant relies is "not a

jurisdictional proscription that can be raised under Rule 12(b)(1)." *Id.* (citing *Schleicher v. Salvation Army*, 518 F.3d 472, 478 (7th Cir. 2008)).

Here, the Beckmans' religious principles are completely compatible with those principles that RCA purports to foster, save one—RCA apparently overlooks the principle of forgiveness for the penitent sinner. Nevertheless, neither of the cases cited land on all fours in support of barring the Beckmans' claims for lack of subject-matter jurisdiction, and as such, this Court should deny RCA's motion to dismiss.

**B.    The Plaintiffs' Causes of Action Against RCA are Sufficiently Pleaded and Should Not be Dismissed**

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint if it fails to state a claim for relief. The Court considers only the pleadings in making this determination and interprets them liberally, accepting all pleaded facts as true and drawing inferences in favor of the plaintiff. *Cheal*, 330 F. Supp. 2d at 1350–51 (N.D. Ga. 2004). A motion to dismiss should be granted only if it is clear that the plaintiff *could not possibly* prove any facts that would entitle them to relief. *Id*. Such motions are disfavored and rarely granted. *Id*.

   **i.    RCA Incorrectly Applies Fed. R. Civ. P. 9(b)**

RCA argues that the Plaintiffs have not met the heightened pleading standard of Fed. R. Civ. P. 9(b). Apparently, RCA is unaware of "the Eleventh Circuit's admonition that 'Rule 9(b) must be read in conjunction with Rule 8(a) . . . .'" *Gamache v. Hogue*, 446 F. Supp. 3d 1315, 1330 (M.D. Ga. 2020). Rule 8(a)(2) states

that a complaint "*must* contain . . . a *short and plain* statement of the claim showing that the pleader is entitled to relief." (Emphasis added.)

"Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud"; in other words: who, what, when, where, and how. *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007) (internal quotation marks omitted); *Gamache,* 446 F. Supp. 3d at 1330.

The Plaintiffs have alleged that RCA's Board of Directors[2] (**who**) supported Kari's taking a leave of absence and gave no indication of any intention to terminate her employment and position (**what**) at a meeting (**where**) during the last two weeks of October 2021 (**when**) which lulled Kari and Rich into a false sense of security as to Kari's position and prevented them from adequately advocating on Kari's behalf to secure her position and prevent her termination and the hostile takeover of RCA (**how**). *See* Second Amended Complaint ("SAC") at ¶¶ 47–51.

The above holds true for the Plaintiffs' claim of negligent misrepresentation as well.

---

[2] Aside from Rich, the board members included Fr. Tran, James Faber, Dan Saegaert, and Frank Scarchilli.

### ii. RCA's Grounds for Dismissal of the Plaintiffs' Claims for Relief Require Evidentiary Findings that are Improper on a 12(b)(6) Motion to Dismiss

RCA seeks to dismiss the Plaintiffs' defamation claims by pursuing preliminary rulings on evidentiary defenses—for example, that excess benefit transactions statements are privileged. However, these defenses are fact-based, evidentiary inquiries under OCGA § 51-5-7[3], which require a finding as to whether such statements were made in good faith. *See Wilmington Tr., N.A. v. Estate of Gonzalez*, No. 1:15-cv-23370-UU, 2015 BL 520647, at *9 (S.D. Fla. Dec. 21, 2015) ("[T]he Court rejects Defendants' claims that their actions in sending the letter and declining to withdraw it are absolutely privileged. Because a question of fact exists whether the Defendants sent the letters in good faith, dismissal is improper at the motion to dismiss stage").

RCA's conclusory statement that Kari is a public figure is not grounds for dismissal of her defamation claim. Public figures are

> 'Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures . . .' Further, '(t)hat designation (public figure) may

---

[3] "The following communications are deemed privileged:

"(1) Statements made in good faith in the performance of a public duty; (2) Statements made in good faith in the performance of a legal or moral private duty; (3) Statements made with a good faith intent on the part of the speaker to protect his or her interest in a matter in which it is concerned …."

> rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions.' *Gertz v. Robert Welch, Inc.*, *supra*, 418 U.S. at 342, 351, 94 S.Ct. at 3008, 3013, 41 L.Ed.2d at 807.

*Williams v. Tr. Co. of Georgia*, 140 Ga. App. 49, 52, 230 S.E.2d 45, 48–49 (1976).

The Beckmans have alleged that Kari made "media appearance and coverage of the projects on both the local and national level for which Kari received no additional remuneration." SAC at ¶ 33. This is a far cry from the "widespread publicity"[4] the *Williams* Court appeared to require for qualifying as a public figure. 140 Ga. App. at 54 (1976). In any event, the Plaintiffs have alleged that the falsehoods perpetrated by RCA were published with knowledge of their falsity or with reckless disregard of whether they were true or false, which is the level of malice required to be proved for public figures. *Rosenblatt v. Baer*, 383 U.S. 75, 77, 86 S. Ct. 669, 671, 15 L. Ed. 2d 597 (1966). *See* SAC at ¶¶ 106–108. These issues

---

[4] Plaintiff's widespread publicity in that case was received "for his civil rights and labor activities, for several arrests, and for his participation in politics and efforts to be elected to public office; that he at one time had his own radio program, had held many press conferences and made numerous public appearances; that he led well publicized demonstrations and took his cause to the people to ask 'the public's support'; and that he was outspoken on subjects of public interest." *Williams v. Tr. Co. of Georgia*, 140 Ga. App. 49, 54, fn. 3 (1976). "An uncontroverted affidavit on behalf of movant lists for the period from August 16, 1961 through April 20, 1973 some 388 news articles and editorials in the Atlanta Journal, Atlanta Constitution, Savannah Morning News, Savannah Evening Press, Columbus Enquirer, and Columbus Ledger." *Id*. at 54.

necessitate evidentiary-based inquiries, which are inappropriate on a 12(b)(6) motion to dismiss. *See Cheal*, 330 F. Supp. 2d at 1350–51 (N.D. Ga. 2004) ("Federal Rule of Civil Procedure 12(b)(6) empowers the Court to grant a defendant's motion to dismiss when a complaint fails to state a claim upon which relief can be granted. In considering whether to grant or deny such a motion, the Court may look only to the pleadings").

Similarly, RCA requests that the Court dismiss the Plaintiffs' copyright-infringement claim because Kari's factual allegations lend themselves to finding an irrevocable nonexclusive implied license. This statement, as well as the authority upon which RCA relies, concede that the determination of the existence of a nonexclusive license is an evidentiary-based inquiry, which is inappropriate on a 12(b)(6) motion to dismiss.

Additionally, the Plaintiffs allege the existence of an enforceable agreement with RCA for their daughter's attendance at RCA's Atlanta center. The Plaintiffs further allege RCA breached that agreement by improperly and injuriously denying Kari access to the RCA campus where her daughter attended school, forbidding her to communicate with the families of other RCA students, and threatening to ban her from attending her daughters graduation (and call the police to have her forcibly removed), if she refused submission to these demands. *See* SAC at ¶¶ 68 & 69. Whether this alleged conduct constitutes a material breach of the parties' agreement,

the character of the Plaintiffs' injuries, and the sum of their damages are all evidentiary issues, the determination of which is improper on a 12(b)(6) motion to dismiss.

Regarding Rich's FLSA and breach-of-contract claims, the Plaintiffs state that Rich volunteered some of his time after January 2021 to help develop the Veritatis Splendor property in Winona, Texas. *See* SAC at ¶ 34. RCA misconstrues this limited statement as an admission that Rich's entire 19-year career with RCA was as a volunteer, which is patently false. Nonetheless, whether Rich was in fact a volunteer, employee, executive, or independent contractor are all evidentiary inquiries that are improper on a 12(b)(6) motion to dismiss.

### iii. RCA Misconstrues the Plaintiffs' Request for Declaratory Relief

The Plaintiffs have requested the Court to issue a declaratory judgment construing the parties' employment agreements in a manner negating RCA's excess benefit claims vis-à-vis Rich, RCA's additional compensation claims vis-à-vis Kari, and declaring that Rich was an employee and not an independent contractor during his 19-year tenure with RCA. *See* SAC at ¶¶ 73–84. The Plaintiffs have alleged that RCA intentionally or negligently made false statements regarding Rich's employment status, and regarding excess benefits and additional compensation the Plaintiffs allegedly received in the 2021 tax year. *See id*.

RCA contends the Plaintiffs have failed to allege facts showing any likelihood

of future injury to Rich Beckman, and therefore no actual controversy exists that allows the Court to issue a declaratory judgment regarding Rich's status as an employee as opposed to an independent contractor. The mere fact that Rich would be liable for payment of employer taxes as an independent contractor and would not be liable as an employee is injury enough. The negative inference independent contractor status entails in Rich's case is another harm, implying as it does that Rich's connection with RCA through the years was not as deep as it in actuality was. There are others.

Furthermore, section 7434 of the Internal Revenue Code ("IRC") allows the Plaintiffs to pursue civil damages against RCA. "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." IRC § 7434. *See also Angelopoulos v. Keystone Orthopedic Specialists, S.C.,* 2015 U.S. Dist. LEXIS 63789 (N.D. Ill. May 15, 2015). Thus, an additional basis exists for the Court to refuse to dismiss the Plaintiffs' declaratory judgment claims, as such relief can be an essential remedy in section § 7434 civil actions.

Concerning the Plaintiffs' § 7434 private cause of action claim, RCA argues—relying on authority that is not binding upon this Court—that misclassification of an individual as an independent contractor rather than an employee is not actionable

under § 7434; that the statute instead is intended for information returns on which the amount paid is misrepresented. Aside from the fact that it relies on non-binding authority for this position, RCA ignores the Plaintiffs' allegations that the amounts reported are misrepresented because they should not have been reported as payment at all. *See* SAC at ¶ 80. Furthermore, with respect to the amended 2021 Form W-2 issued to Kari, the reported additional income purportedly arose from unsubstantiated expenses made on the RCA corporate credit card, which never happened. *See id.* Conveniently, the substantiating records were left in RCA's possession and control following Rich and Kari's ouster. In any event, reclassifying appropriate business expenses as income is indeed a willful misrepresentation of the amount paid to Kari in 2021 and actionable under § 7434, which is supported by RCA's own analysis.

RCA further argues that the Plaintiffs have plead themselves out of a § 7434 claim by supposedly affirming the amounts reported in the false tax returns RCA issued.  RCA believes this is so because the Plaintiffs have stated that RCA's Board of Directors ratified the housing and vehicle use as an employer convenience and that RCA more than recouped the benefits it provided to the Plaintiffs. RCA strangely confuses the fact that this is the very argument that the Plaintiffs are making: The benefits they received from RCA were not benefits in excess of the consideration the Plaintiffs provided to RCA (rather, the opposite), and that they

were ratified as employer convenience and, therefore, were not taxable compensation; and, so, should not have been reported as such, as RCA falsely did.

Contrary to RCA's assertions, the Plaintiffs' claims for declaratory judgment are not barred under the Declaratory Judgment Act.[5] The Plaintiffs have not named the IRS as a defendant in this action, nor do the Plaintiffs assert any wrongdoing on the part of the IRS, as anticipated by the Act. Likewise, the Plaintiffs do not seek to avoid or evade any administrative remedies provided for in the Internal Revenue Code. Therefore, no basis exists for the Court to dismiss the Plaintiffs' declaratory-judgment claims, as this action does not involve the U.S. Government. *See Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011) ("Taking these provisions together [i.e., the Declaratory Judgment Act and the Anti-Injunction Act], it is clear that, with certain exceptions not applicable here, judicial review of IRS determinations is largely circumscribed to entertaining suits for the refund of already-paid taxes"). *See also Raulerson v. United States*, 786 F.2d 1090, 1093, n.7 (11th Cir. 1986) (citing *Wilson v. Wilson*, 141 F.2d 599, 600 (4th Cir.1944) for the finding that "in advance of tax assessment, [the Declaratory Judgment] Act bars suits that seek to control IRS's discharge of official duties"); *Peach Bowl, Inc. v. Shultz*, 370 F. Supp. 685, 690 (N.D. Ga. 1973) ("The [prohibitive provision of the

---

[5] 28 U.S.C. § 2201.

Declaratory Judgment Act] is coterminous with the prohibitive provision of [the Anti-Injunction Act]"); *Welt v. United States*, No. 22-cv-20294-BLOOM/OTAZO-REYES, 2022 BL 348728, at *3 (S.D. Fla. Sept. 29, 2022) ("The Declaratory Judgment Act's tax exception is 'coextensive' with the Anti-Injunction Act").

Accordingly, the Court should deny RCA's Motion to Dismiss.

### III.  CONCLUSION

Based on the foregoing, the Plaintiffs respectfully request that the Court deny the Motion and grant the Plaintiffs all other and further relief at law and in equity to which the Plaintiffs may demonstrate themselves entitled.

Respectfully submitted this 8th day of March, 2024.

Respectfully submitted,

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C.**
1200 Smith Street, 14th Floor
Houston, Texas 7002
Telephone: (713) 658-1818
Facsimile (713) 658-2553

*/s/ Juan F. Vasquez, Jr.*

JUAN F. VASQUEZ, JR.
juan.vasquez@chamberlainlaw.com
Texas Bar No. 24033294
Southern District No. 2982

DAVID M. MEDINA
david.medina@chamberlainlaw.com
Texas Bar No. 88
Southern District No. 2609723

STUART H. CLEMENTS
stuart.clements@chamberlainlaw.com
Texas Bar No. 24087315
Southern District No. 3005543

*Counsel for Plaintiffs*

## CERTIFICATE OF FONT COMPLIANCE

Counsel for Plaintiffs Richard Beckman and Kari Beckman hereby certifies that the foregoing has been prepared with one of the font and point selections approved by the Court in LR 5.1(B): Times New Roman (14 point).

**CHAMBERLAIN, HRDLICKA, WHITE, WILLIAMS & AUGHTRY, P.C.**

*/s/ Stuart H. Clements*
Stuart H. Clements
Admitted *Pro Hac Vice*

Case 1:23-cv-06000-SEG   Document 93   Filed 03/08/24   Page 19 of 19

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was served on all counsel of record on March 8, 2024 as follows.

Steven R. Press
spress@bakerdonelson.com
Tyler Bishop
tbishop@bakerdonelson.com
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
3414 Peachtree Rd, NW, Suite 1500
Atlanta, GA 30326

*Counsel for Defendant RCA*

Barbara A. Marschalk
marschalkb@deflaw.com
Taylor Alig
aligt@deflaw.com
DREW ECKL & FARNHAM, LLP
303 Peachtree St., Suite 3500
Atlanta, GA 30308

*Counsel for Defendant Fr. Tran*

Keith Sieczkowski
ksieczkowski@branscomblaw.com
BRANSCOMB PLLC
802 North Carancahua, Suite 1900
Corpus Christi, TX 78470-0700

Stephen M. Forte
sforte@srlaw.com
Sasha N. Greenberg
sgreenberg@sgrlaw.com
Matthew W. Clarke
mclarke@sgrlaw.com
SMITH, GAMBRELL & RUSSELL, LLC
1105 W. Peachtree St NE, Suite 100
Atlanta, GA 30309

*Counsel for Defendant Roman Catholic Archdiocese of Atlanta*

                                            */s/ Stuart H. Clements*
                                            Stuart H. Clements

Page **19** of **19**